

633 Battery Street
San Francisco, CA 94111-1809
415 391 5400
kvn.com

**Elliot R. Peters**
(415) 676-2273
epeters@kvn.com

September 29, 2015

Hon. Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

Re:   Request for pre-motion conference in *Wyckoff v. Office of the Commissioner of Baseball et al.* (S.D.N.Y. No. 1:15-cv-5186-PGG)

Dear Judge Gardephe:

We represent the Defendants in the *Wyckoff* matter. Under Rule 4.A of your Individual Rules of Practice, we respectfully request a conference to discuss our proposed motion to dismiss Plaintiff's claims under Federal Rules 12(b)(1) and 12(b)(6). We have discussed our motion with Plaintiff's counsel and they have informed us that they intend to oppose it.

**The Plaintiff's allegations and causes of action.**

This is an antitrust and wage-and-hour case. Plaintiff Jordan Wyckoff alleges that he signed a contract to work as a part-time scout for the Kansas City Royals ("the Royals") from October 2012 to October 2013. First Amend. Compl. (Dkt. 101) at ¶¶ 116, 118. The contract entitled Wyckoff to an annual salary, which the Royals paid in semi-monthly installments. *Id.* at ¶ 118. Wyckoff purports to bring a cause of action under the Fair Labor Standards Act against Major League Baseball ("MLB"), the Royals, and all 29 other Major League Clubs ("Clubs") (despite never having been employed by any Club other than the Royals). *Id.* at ¶¶ 147–55. In particular, Wyckoff alleges that the Royals and MLB failed to pay the applicable minimum or overtime wage for all of the hours that he worked, *id.*, and seeks to bring the same claims against 29 other Clubs—with whom he had no employment relationship—on behalf of a "similarly situated . . . MLB Scout Collective." *Id.* at ¶¶ 72–74.

In addition, Wyckoff alleges that MLB, the Commissioner, and the 30 Clubs have conspired to decrease competition in the labor market for scouts. *Id.* at ¶ 4. Wyckoff claims that the Defendants prohibit Clubs from "cold-calling" scouts while they are under contract with another Club, and that Defendants also prohibit scouts from "discussing employment opportunities with other Defendants without permission from supervisors." *Id.* at ¶ 3. Wyckoff brings antitrust causes of action under the federal Sherman Act and New York's Donnelly Act. Wyckoff also

991044

Hon. Paul G. Gardephe
September 29, 2015
Page 2

seeks to bring these claims on behalf of a proposed nationwide class of "salaried . . . scouts." *Id.* at ¶ 63.

**<u>Motion to dismiss antitrust claims.</u>**

Wyckoff's antitrust claims are barred by nearly a century of binding precedent. The Supreme Court first held that the "business of baseball" is exempt from antitrust regulation in 1922. *Fed. Baseball Club of Baltimore v. Nat'l League of Prof'l Baseball Clubs*, 259 U.S. 200, 208 (1922). Since then, the Court has repeatedly enforced the exemption to dismiss a wide variety of claims brought under both federal and state antitrust laws. *See Toolson v. New York Yankees, Inc.*, 346 U.S. 356, 357 (1953); *Flood v. Kuhn*, 407 U.S. 258, 284–85 (1972). As the Seventh Circuit correctly noted, "The Supreme Court has held three times that 'the business of baseball' is exempt from the federal antitrust laws." *Charles O. Finley & Co. v. Kuhn*, 569 F.2d 527, 541 (7th Cir. 1978). And it is "clear from the entire opinions in the three baseball cases . . . that the Supreme Court intended to exempt the business of baseball, not any particular facet of that business, from the federal antitrust laws." *Id.*[1] The antitrust exemption does ***not*** require a "fact-sensitive analysis" merely because a plaintiff claims that some practice is outside the scope of the antitrust exemption. *San José*, 776 F.3d at 690. Instead, the exemption is akin to an immunity, and can be decided on a motion to dismiss.

During a meet-and-confer call to discuss this letter, Plaintiff's counsel stated that he believed Wyckoff's claim was outside the scope of the antitrust exemption, but he could provide no legal basis for this belief. Counsel's belief is wrong. Every Circuit Court of Appeals to address the scope of baseball's antitrust exemption has held the exemption protects the entire "business of baseball."[2] In fact, the Second Circuit has held that the exemption specifically protects

---

[1] And the antitrust exemption *also* bars claims under *state* antitrust law because subjecting the business of baseball to state-antitrust regulation would create a significant "burden on interstate commerce [that] outweighs the states' interests in regulating baseball[]." *Flood*, 407 U.S. at 284 (quoting *Flood v. Kuhn*, 443 F.2d 264, 268 (2d Cir. 1971)). Indeed, "no case" has "ever held that state antitrust claims continue to be viable after federal antitrust claims have been dismissed under the baseball exemption." *City of San José v. Office of the Commissioner of Baseball,* 776 F.3d 686, 691 (9th Cir. 2015); *see also Major League Baseball v. Crist*, 331 F.3d 1177, 1179 (11th Cir. 2003) (holding that "federal law establishes a universal exemption in the name of uniformity"). Therefore, Wyckoff cannot state a claim for relief under either federal or state antitrust law.

[2] CA1: *Triple-A Baseball Club Assocs. v. Ne. Baseball, Inc.*, 832 F.2d 214, 216 n.1 (1st Cir. 1987) (noting—in dictum—that baseball's antitrust exemption would exempt league decision on relocation of minor league club).

CA2: *Salerno v. Am. League of Prof'l Baseball Clubs*, 429 F.2d 1003, 1005 (2d Cir. 1970) (exempting MLB's employment relationship with umpires).

employment relationships in professional baseball, including employment of players and umpires. *See Salerno*, 429 F.2d at 541; *Flood*, 443 F.2d at 265–66. And various other courts, including the Supreme Court, have also held that the exemption blocks claims related to the Clubs' employment relationship with players. *See Toolson*, 346 U.S. at 357; *Flood*, 407 U.S. at 285; *Miranda v. Selig et al.*, 2015 WL 5357854, at *3 (N.D. Cal. Sept. 14, 2015). Scouts evaluate, draft, and sign players—in other words, scouts help assemble the teams that face each other in the Major and Minor Leagues. *See* First Amend. Compl. ¶¶ 81–83. The employment of scouts cannot plausibly be outside of the "business of baseball," and Plaintiff's antitrust claims are barred by the exemption.

**Motion to dismiss wage-and-hour claims.**

Wyckoff's wage-and-hour claims should be dismissed as to the 29 Clubs for which he never worked because (a) Wyckoff lacks standing to sue non-employers and therefore this Court lacks subject-matter jurisdiction under Federal Rule 12(b)(1), and (b) Wyckoff fails to state wage-and-hour claims under Federal Rule 12(b)(6) against entities that never employed him.

Wyckoff lacks Article III standing to sue the 29 Clubs that never employed him, as he has no relationship with those Clubs and accordingly has not, and cannot, plead that he was injured by them. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62–63, 65–66 (2d Cir. 2012) (holding that even if a plaintiff has standing to sue one defendant, the plaintiff lacks Article III standing to sue other defendants who did not, themselves, injure the plaintiff). During a meet-and-confer discussion, Plaintiff's counsel indicated that he did not anticipate adding any additional named plaintiffs at this time, and that he believed that Wyckoff has cognizable claims against the 29 other Club Defendants based on the scope of the collective that Wyckoff purports to represent. But Wyckoff cannot cure his standing deficiencies by relying on the hypothetical claims of putative members of the collective. "In multidefendant class actions, the named plaintiffs must show that *each* defendant has harmed at least one of them." Newberg on Class Actions § 2:5 (5th ed. 2015) (emphasis added). Since Wyckoff cannot establish that *any* of the 29 other Club Defendants injured him, he has not presented a case or controversy to this Court and those Defendants must be dismissed. *See, e.g. Mahon*, 683 F.3d at 62, 65–66; *McCall v. Chesapeake*

---

CA7: *Charles O. Finley & Co., Inc. v. Kuhn*, 569 F.2d 527, 541 (7th Cir.) (exempting Commissioner's veto of player trade).

CA9: *City of San José v. Office of the Commissioner of Baseball*, 776 F.3d 686, 689–90 (9th Cir. 2015) (exempting MLB's process for franchise relocation); *Portland Baseball Club, Inc. v. Kuhn*, 491 F.2d 1101, 1103 (9th Cir. 1974) (per curiam) (exempting MLB's decision to locate major league club in minor league territory); *Portland Baseball Club, Inc. v. Baltimore Baseball Club, Inc.*, 282 F.2d 680 (9th Cir. 1960).

CA11: *Major League Baseball v. Crist*, 331 F.3d 1177, 1183 (11th Cir. 2003) (exempting MLB's process for franchise contraction); *Prof'l Baseball Sch. & Clubs, Inc. v. Kuhn*, 693 F.2d 1085, 1085–86 (11th Cir. 1982) (exempting minor league "franchise location system").

*Energy Corp.*, 817 F. Supp. 2d 307, 313 (S.D.N.Y. 2011) (dismissing various defendants because the named plaintiff did not allege any relationship with them and instead purported to rely on the claims of unnamed class members) *aff'd*, 509 F. App'x 62 (2d Cir. 2013)).

Even if Wyckoff did have standing to sue, which he does not, his wage-and-hour claims against all 29 Clubs for which he never worked fail on the independent ground that he has failed to state a claim pursuant to Federal Rule 12(b)(6).  To state a claim under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, a plaintiff must establish an employment relationship with each defendant.  *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) (noting that Plaintiffs must allege the identity of their "actual and direct employer" in order to satisfy FLSA-pleading standards).  Wyckoff alleges, at most, an employment relationship with the Royals and MLB.[3]  Accordingly, he has failed to state a claim with regard to all other Defendants in this matter because, even accepting his allegations as true, Plaintiff cannot plausibly state a wage-and-hour claim against Defendants for whom he never worked.

We respectfully request a pre-motion conference with the Court and seek permission to file a motion to dismiss the vast majority of Plaintiff's claims, including all of his antitrust claims, and all of his wage-and-hour claims against the 29 Clubs with which he does not allege any employment relationship.

Very truly yours,

| KEKER & VAN NEST LLP | PROSKAUER ROSE LLP |
|---|---|
| */s Elliot R. Peters* | */s Elise M. Bloom* |
| Elliot R. Peters | Elise M. Bloom |
| R. Adam Lauridsen | Adam M. Lupion |
| Thomas E. Gorman | |
| Attorneys for Defendants | Attorneys for Defendants[4] |

---

[3] Defendants expressly reserve their rights to challenge Plaintiff's claims with respect to any alleged joint-employment relationship between MLB and any Club.

[4] Proskauer Rose LLP is not serving as counsel for the Baltimore Orioles Limited Partnership or Baltimore Orioles, Inc.

991044